The Honorable John W. Parkerson State Representative 520 Ouachita Avenue Hot Springs, AR 71901-5196
Dear Representative Parkerson:
This is in response to your request for an opinion regarding the radiography program at the Garland County Community College. The question posed is whether a violation of either the Arkansas Nurse Practice Act or the Medical Practices Act would occur if venipuncture were included in the College's radiographic curriculum, with the intent of students performing the actual procedure on patients in clinical settings. You state that the "venipuncture" procedure in question is an invasive procedure into a vein for the purpose of introducing diagnostic dye.
My review indicates that neither the Nurse Practice Act, as amended (A.C.A. §§ 17-86-101—401 (Repl. 1992)), nor the Medical Practices Act, as amended (A.C.A. §§ 17-93-201—205, -301, -303, -305, and -401 -411 (Repl. 1992)), specifically addresses the necessary qualifications for an individual to perform venipuncture. Nor does the statutory definition of "[p]ractice of professional nursing" (A.C.A. § 17-86-102(2)[1] or "[p]ractice of medicine" (A.C.A. § 17-93-202(2))[2] appear to encompass this procedure as performed by students in clinical settings.
Similarly, there appear to be no regulations addressing this procedure. The Arkansas State Board of Nursing has not, to my knowledge, addressed this matter. It should be noted, however, that the Arkansas State Medical Board has concluded, based upon research conducted by a board member, that student Radiologic Technologists may lawfully perform venipuncture, in accordance with the following parameters, which have been established, in part, through custom and practice:
 1. That the student have completed a curriculum course on venipuncture, including didactic and laboratory study. (There are no standards for clinical competency examination, but the student may be examined regarding basic comprehension of material).
 2. That, in accordance with standards of the Joint Commission of Accreditation of Hospitals, the student be noted in the Policy and Procedure Manual of the Radiology Department as being eligible to perform venipuncture, under the direct supervision of a Radiologic Technologist.
 3. That the procedure be carried out in accordance with OSHA's Bloodborne Pathogens Regulation for Healthcare Providers (29 C.F.R. 1910.1030). It follows that the student must be familiar with this regulation, a copy of which compliance manual is available from
 Arkansas Department of Labor Safety Division 10421 West Markham Little Rock, AR 72205
Letter from John E. Bell, M.D., to Peggy Cryer, Executive Secretary, Arkansas State Medical Board (Sept. 10, 1992).
The Arkansas State Medical Board is charged with the power and duty to administer and construe the Medical Practices Act. Its interpretation of the act and regulations promulgated thereunder, while not conclusive, is highly persuasive. See generallyArk. Contractors Licensing Board v. Butler, 295 Ark. 223,748 S.W.2d 129 (1988). Thus, giving the necessary weight to the Medical Board's determination, and taking into account the absence of clear statutory authority to the contrary, it is my opinion that venipuncture may be included in the College's radiographic curriculum. The parameters or comments noted above that were drawn from custom and practice should, however, be considered when implementing the program.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Section 17-86-102 defines the "[p]ractice of professional nursing" as:
the performance for compensation of any acts involving the observation, care, and counsel of the ill, injured, or infirm; the maintenance of health or prevention of illness of others; the supervision and teaching of other personnel; or the administration of medications and treatments as prescribed by a licensed physician or dentist, where such acts require substantial specialized judgment and skill based on knowledge and application of the principles of biological, physical, and social sciences.
[2] The "[p]ractice of medicine" is defined under Section17-93-202(2) as:
 A) Holding out one's self to the public within this state as being able to diagnose, treat, prescribe for, palliate, or prevent any human disease, ailment, injury, deformity, or physical or mental condition, whether by the use of drugs, surgery, manipulation, electricity, or any physical, mechanical, or other means whatsoever;
 B) Suggesting, recommending, prescribing, or administering any form of treatment, operation, or healing for the intended palliation, relief, or cure of any physical or mental disease, ailment, injury, condition, or defect of any person with the intention of receiving, either directly or indirectly, any fee, gift, or compensation whatever;
 C) The maintenance of an office or other place to meet persons for the purpose of examining or treating persons afflicted with disease, injury, or defect of body or mind;
 D) Using the title "M.D.," "M.B.," "Physician," "Surgeon," or any word or abbreviation to indicate or induce others to believe that one is engaged in the diagnosis or treatment of persons afflicted with disease, injury, or defect of body or mind, except as otherwise expressly permitted by the laws of this state relating to the practice of any limited field of the healing arts; or
 E) Performing any kind of surgical operation upon a human being.